**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| WILLIAM HANSEL, | :  CIVIL ACTION |
| | : |
| Plaintiff, | : |
| v. | :  No. 17-3931 |
| | : |
| AETNA LIFE INSURANCE CO., et al., | : |
| | : |
| Defendants. | : |

_____

Mitchell S. Goldberg, J.                                          June 25, 2018

## MEMORANDUM OPINION

Plaintiff William Hansel brings claims under the civil enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against Defendants Aetna Life Insurance Company ("Aetna") and Lincoln National Life Insurance Company ("Lincoln"), seeking disability benefits under an employee benefits plan. Aetna has moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]  Because I find Aetna's arguments to be factual, Defendant's Motion to Dismiss is premature. I will therefore deny the Motion.

## I.      FACTUAL BACKGROUND

The Amended Complaint sets forth the following facts:[2]

From December 1, 2015 until mid-2016, Plaintiff was an employee of Anexinet Corporation ("Anexinet"), who provided Plaintiff with a disability insurance plan governed by

---

[1] Lincoln has filed an answer.

[2] When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  I assume that all the facts found in the Amended Complaint are true.

ERISA and sponsored by third-party insurers.  Lincoln was the plan's sponsor prior to March 1, 2016, and Aetna sponsored it from March 1 onward.  The terms of the Aetna policy are described in a "Booklet-Certificate" that Plaintiff attached to his Amended Complaint.[3]  The policy offered short-term and long-term disability benefits.  (Am. Compl. ¶¶ 1–3, 7–16.)

On February 26, 2016, Plaintiff alleges that he "went out of work with severe anxiety and depression, and exacerbation of his bi-polar disorder."  He "was non-functional to the point of not being able to leave his home."  On March 4, 2016, Plaintiff was admitted to a treatment center. Since then, Plaintiff has been under the ongoing supervision of a physician.  At the time Plaintiff filed his Complaint, he was still unable to work.  (Id. ¶¶ 17–21.)

On March 4, 2016, Plaintiff applied to Aetna for short-term disability benefits.  Aetna denied coverage because it concluded that Plaintiff's disability started on February 26, 2016— the day of his first absence from work—four days before the Aetna coverage period began on March 1, 2016.  Plaintiff then applied to Lincoln, which also denied coverage, based on, among other reasons, its conclusion that Plaintiff's disability did not begin until March 4, 2016, the date Plaintiff first sought treatment.  This date was four days after the Lincoln coverage period ended on February 29, 2016.  (Id. ¶¶ 25–29.)

Plaintiff did not apply to either Lincoln or Aetna for long-term disability benefits.  Under both insurer's policies, a participant is not eligible for long-term disability before exhausting short-term disability.  Plaintiff alleges that, given both insurers' positions that he was not eligible

---

[3] The parties have not indicated whether the Booklet-Certificate contains the entire contractual language relevant to this dispute.  Although the document states that "Aetna agrees with the Policyholder to provide coverage . . . as set forth in this Booklet-Certificate," it also states that "[t]his Booklet-Certificate is part of the Group Insurance Policy," and that "[u]nless specifically provided in any applicable termination provision described in this Booklet-Certificate *or* under the terms of the Group Insurance Policy, the plan does not pay benefits for a disability that starts before coverage starts under this plan."  (Am. Compl., Ex. D at AETNA 00232–33 (emphasis added).)

for short-term disability, applying for long-term disability would have been futile.  (Id. ¶¶ 46–49, 57–59.)

Plaintiff filed suit in this Court on August 31, 2017, seeking an award of short-term and long-term disability benefits from both insurers, a declaration of his future right to receive long-term disability benefits, and attorney's fees and costs.  (Id. ¶¶ 83, 102.)

## II.     STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  Id.  To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted).  Plaintiff's claims are analyzed below under this standard.

## III.    ANALYSIS

ERISA permits a plan beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  To succeed in such an action, a plaintiff must show that he was owed benefits under the plan and that benefits were wrongly denied.  Manning v. Sanofi-Aventis, U.S. Inc., No. 3:11-cv-1134, 2012 WL

3542284, at *3 (M.D. Pa. Aug. 14, 2012).  Additionally, the plaintiff must first have exhausted administrative remedies under the plan or show that exhaustion would be futile.  Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990).

Aetna argues that Plaintiff has not plausibly alleged an entitlement to relief because the undisputed facts show that: (a) Plaintiff's disability began before the start of the Aetna policy, putting it outside the policy's coverage; (b) even if Plaintiff was not disabled before the start of the policy, his absence from work delayed coverage until after he became disabled; and (c) Plaintiff has not plausibly alleged that exhaustion of administrative remedies for long-term disability benefits would be futile.

### A.      Plaintiff's Date of Disability

Aetna first argues that it is undisputed that Plaintiff's disability began on February 26, 2016, putting the disability outside of Aetna's coverage period, which did not start until March 1, 2016.  Plaintiff counters that the first date on which his condition met the definition of a "disability" under the policy is a factual issue that cannot be resolved on a motion to dismiss.

Plaintiff and Aetna both rely on the Booklet-Certificate for the definition of a covered "disability."  (Am. Compl., Ex. D.)  The Booklet-Certificate defines a disability as being "not able [to] perform the material duties of your own occupation because of an illness or injury."  (Id. at AETNA 00237.)  "Illness" an "injury" are themselves defined terms, as is the meaning of being unable to perform the material duties of one's own occupation.  (See id. at AETNA 00237, 00250.)[4]

---

[4] An "illness" is "[a] pathological condition of the body that presents a group of clinical signs and symptoms[,] and laboratory findings peculiar to the findings set the condition apart as an abnormal entity differing from other normal or pathological body states."  (Am. Compl., Ex. D at AETNA 00250.)  An "injury" is "[a]n accidental bodily injury that is the sole and direct result of: [a]n unexpected or reasonably unforeseen occurrence or event; or [t]he reasonable unforeseeable consequences of a voluntary act by the person."  (Id.)

Although the Amended Complaint raises a possible inference that Plaintiff became disabled on February 26, 2016, that is not the only inference that can be drawn from these facts. Plaintiff was not treated until March 4, 2016, and Lincoln determined that his disability did not begin until that date.  (Am. Compl. ¶¶ 19, 29, 32.)   Additionally, Plaintiff's Social Security disability began on March 4, 2016.  (Id. ¶ 24.)  These facts raise an equally plausible inference that Plaintiff's condition did not become a "disability" until after the start of the Aetna coverage period, either because it was not an "illness" or "injury" until that time or because Plaintiff was still capable of performing the "material duties" of his job.

When more than one inference can be drawn from a pleading, it is premature to resolve the conflict on a motion to dismiss.  Connelly v. Lane Constr. Corp., 809 F.3d 780, 790–91 (3d Cir. 2016).  Because Plaintiff plausibly alleges that he is disabled and that his disability is covered by the Aetna policy, Plaintiff's Amended Complaint will not be dismissed for failure to allege a disability beginning within the coverage period.[5]

**B.     The "Active Work" Requirement**

Next, Aetna argues that even if Plaintiff was not disabled on February 26, 2016, it is at least undisputed that he was not at work from that date forward.  This fact, according to Aetna, delayed the effective start date of coverage as specified in the Booklet-Certificate's "Active Work Rule," so that Plaintiff would not have been covered on the date he became disabled.  The "Active Work Rule" operates to delay coverage if an employee is "ill or injured and away from work on the date [the employee's] coverage would take effect."  (Am. Compl., Ex. D at AETNA

---

[5] In its Reply, Aetna argues that even though the Amended Complaint does not expressly state when Plaintiff became disabled, Plaintiff's allegation that he left work on February 26, 2016 amounts to a "judicial admission" that his disability began on that date.  (Reply, Doc. No. 17, at 1.)   Federal Rule of Civil Procedure 8(d)(2) expressly permits pleading in the alternative. Plaintiff's seemingly contradictory positions as to the start of his disability do not render the Amended Complaint deficient.

5

00235.)[6]  "Ill" and "injured" are, as noted above, defined terms that are also used in the definition of disability, whereas "away from work" is not defined.  (<u>Id.</u> at AETNA 00250.)

Plaintiff, both in his Amended Complaint and in his Response to Aetna's Motion, counters that because the Aetna policy replaced prior coverage under which Plaintiff was already "actively at work," he was automatically "actively at work" under the Aetna policy despite not being physically present in the office.  Plaintiff points to language in the Booklet-Certificate stating that Aetna's coverage "replaces and supersedes" any prior coverage and that it is "in exchange for everything under such prior coverage."  (<u>Id.</u> at AETNA 00242.)  These terms—"replaces," "supersedes," and "in exchange,"—are not defined, but Plaintiff argues that their effect is to put him in the same active-work status under the Aetna plan as he had been under the Lincoln plan.[7]  Plaintiff further contends that if Aetna's view of the policy were correct, anyone who, on the coverage start date, was just ill enough to stay home from work, but not ill enough to qualify as disabled, would fall into a coverage gap, contrary to the plan's intention of seamlessly transferring coverage between carriers.

Even if it were possible to resolve the meaning of the active-work requirement and the effect of Plaintiff's prior coverage solely from the Amended Complaint and its attachments, the question of whether Plaintiff was, within the meaning of the policy, "ill . . . and away from work" as of March 1, 2016 is a factual dispute that cannot be resolved on a motion to dismiss. The same facts that give rise to an inference that Plaintiff was not disabled on February 26, 2016 also give rise to an inference that he was not "ill" on that date as defined by the policy.  In fact,

---

[6] The Booklet-Certificate also contains a definition of "actively at work," but the "Active Work Rule" does not explicitly reference this definition.  (Am. Compl., Ex. D at AETNA 00235, 00249.)

[7] As noted above, the parties do not state whether additional contractual language might clarify the terms of the Booklet-Certificate with respect to prior coverage.

Plaintiff alleges that he was a full-time employee eligible for coverage under the Aetna policy at the time he became disabled.  (Am. Compl. ¶¶ 50, 55.)  Although this allegation may potentially conflict with his contention that he left work because of disability on February 26, 2016, a motion to dismiss is "not a proper procedural vehicle to resolve conflicting inferences of fact." TL of Fla., Inc. v. Terex Corp., 54 F. Supp. 3d 320, 329 (D. Del. 2014).  Accordingly, Plaintiff's allegation that he left work on February 26, 2016 does not, at this stage of the litigation, create a ground for dismissing Plaintiff's Amended Complaint for failure to state a claim.

### C.      Futility of Exhausting Administrative Remedies

Finally, Aetna contends that Plaintiff's claim for long-term disability benefits should be dismissed because Plaintiff did not exhaust administrative remedies by first seeking these benefits from Aetna.  Plaintiff concedes that he did not exhaust administrative remedies for long-term disability benefits, but argues that exhaustion is excused because it would be futile.  Since Aetna has already decided that Plaintiff's disability is not covered by the policy, Plaintiff argues that it would be unproductive to ask Aetna for yet another uncovered benefit.

"Except in limited circumstances, . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990).  However, "courts have recognized an exception when resort to the administrative process would be futile." Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990).  The futility inquiry is factual and depends on:

(1) whether plaintiff diligently pursued administrative relief;

(2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances;

(3) existence of a fixed policy denying benefits;

(4) failure of the insurance company to comply with its own internal administrative procedures; and

(5) testimony of plan administrators that any administrative appeal was futile. Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002).

Here, Plaintiff applied for short-term disability benefits and was denied.  (Am. Compl. ¶¶ 25–26, 43, 56.)   According to Plaintiff's allegations, long-term disability benefits are unavailable until he has first completed short-term disability benefits.  (Id. ¶ 58.)  Therefore, Plaintiff contends that even if he were to apply to Aetna for long-term disability benefits, he would be barred by Aetna's prior determination that his disability started before the policy took effect.  (Id. ¶ 59.)  In Plaintiff's view, it would be neither efficient nor in furtherance of ERISA's policy goals to have him seek long-term disability benefits from Aetna before filing the present lawsuit.

Plaintiff has adequately alleged, for purposes of Rule 12(b)(6) review, that exhaustion would be futile.  Whether exhaustion would in fact be futile remains a disputed issue that cannot be decided at this time.  See Stampone v. Walker, No. 17-2660, 2018 WL 317038, at *2–3 (3d Cir. Jan. 8, 2018) (finding dismissal for lack of exhaustion "premature" at the pleading stage when the issue depends on evidence); Ciotti v. Meadowlands Hosp. Med. Ctr., No. 2:13-cv-2055, 2015 WL 127720, at *4 (D.N.J. Jan. 7, 2015) ("The issue of exhaustion cannot profitably be addressed without discovery, and may be ripe for decision only at the summary judgment stage, if then.").  Accordingly, Plaintiff's claim for long-term disability benefits will not be dismissed for failing to exhaust administrative remedies.

## IV.   CONCLUSION

For the foregoing reasons, I find that Plaintiff has pleaded a plausible claim for relief sufficient to withstand a motion to dismiss.  Accordingly, Aetna's Motion will be denied.

An appropriate Order follows.

8